IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

VALMA COLLINS,

            Plaintiff,

            vs.                          Case No. 07-1368-JTM

MICHAEL J. ASTRUE, Commissioner of
Social Security,

            Defendant.


MEMORANDUM AND ORDER


Plaintiff Valma Collins has applied for Social Security disability benefits.  Her application was denied by the ALJ on November 1, 2006, a decision affirmed by the Appeals Council on October 15, 2007.  There are four allegations of error by Collins: (1) That the residual functional capacity (RFC) adopted by the ALJ is not supported by substantial evidence, (2) that the ALJ failed to properly consider the evidence from a treating physician, (3) that the ALJ's step 5 decision is not supported by substantial evidence, and (4) that the ALJ failed to properly develop the record.

Plaintiff-claimant Collins was born in 1964.  She stated that she became disabled beginning January 1, 1986, due to a variety of ailments, including asthma, recurrent kidney infections, back problems, arthritis, dizzy spells, bronchitis, high blood pressure, depression, anemia, low calcium and potassium, high blood sugar, mild mental retardation, and macular degeneration.  She has a ninth grade education, and has no past relevant work. The detailed facts of the case, which are

incorporated herein, are set forth independently in the ALJ's opinion (Tr.  22-33), and the brief of Collins (Dkt. No. 7, at 2-9), and set forth *seriatim* in the argument section of the Commissioner's response (Dkt. No. 12, at 3-13).

The ALJ concluded that Collins did not have an impairment or combination of impairments which would be considered severe under the 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 24-26).   After a review of the evidence relating to obesity, back pain, asthma and diabetes, the ALJ concluded that Collins retained an RFC which allowed

> lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently, sitting about 6 hours of an 8-hour day, and standing or walking about 2 hours of an 8-hour day. Pushing and pulling limitations are the same as those for lifting and carrying. The claimant has nonexertional limitations precluding more than occasional (1/3 of an 8-hour day) rope, ladder, and scaffold climbing, and more than frequent (2/3 of an 8-hour day) stair climbing, balancing, stooping, kneeling, crouching, and crawling. The claimant has no manipulative, visual, or communicative limitations, but should avoid concentrated exposure to extreme pain due to asthma and to avoid exacerbations of pain. She should avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, and other airborne pollutants as a result of asthma, and concentrated exposure to work hazards due to obesity, shortness of breath, and pain. As a result of her affective disorder and her borderline intellectual functioning, the claimant is moderately limited in the ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended time periods, perform activities within a schedule, maintain regular work attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, to respond appropriately to set realistic goals or make plans independently of others. The claimant is able, however, to hold down a very simple, unskilled job that his [sic] very low stress in nature. She is shy, but can work with others.

(Tr.  26-27).

The Commissioner determines whether an applicant is disabled pursuant to a five-step sequential evaluation process (SEP) pursuant to 20 C.F.R.  §§ 404.1520 and 416.920.  The applicant

has the initial burden of proof in the first three steps:  she must show that whether she is engaged in substantial gainful activity, that she has a medically-determinable, severe ailment, and whether that impairment matches one of the listed impairments of 20 C.F.R. pt. 404, subpt P., app. 1.  *See Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  If a claimant shows that she cannot return to her former work, the Commissioner has the burden of showing that she can perform other work existing in significant numbers in the national economy.  20 C.F.R. § 404.1520(f).  *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

The court's review of the Commissioner's decision is governed by 42 U.S.C.  405(g) of the Social Security Act.  Under the statute, the Commissioner's decision will be upheld so long as it applies the "correct legal standard," and is supported by "substantial evidence" of the record as a whole.  *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

Substantial evidence means more than a scintilla, but less than a preponderance.  It is satisfied by evidence that a reasonable mind might accept to support the conclusion.  The question of whether substantial evidence supports the Commissioner's decision is not a mere quantitative exercise; evidence is not substantial if it is overwhelmed by other evidence, or in reality is a mere conclusion.  *Ray*, 865 F.2d at 224.  The court must scrutinize the whole record in determining whether the Commissioner's conclusions are rational.  *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

This deferential review is limited to factual determinations; it does not apply to the Commissioner's conclusions of law.  Applying an incorrect legal standard, or providing the court with an insufficient basis to determine that correct legal principles were applied, is grounds for reversal.  *Frey* v. *Bowen*, 816 F.2d 508, 512 (10th Cir.  1987).

3

Collins first argues that the ALJ erred in relying on the evidence supplied by consulting psychologist, Mark Goodman, Ph.D.  Collins stresses that Goodman never actually examined her and only reviewed the (then existing) medical record, and that  Goodman's medical source statements were issued two years before the hearing.  She further argues that Goodman, a mental health source, improperly gave vocational testimony.

The court finds no error.  The ALJ noted that Dr. Goodman's medical source statements were consistent with those provided by Dr. Jean Legler, M.D. whose  review  the ALJ noted was "the most recent" prior to the hearings  (Tr. 29), and which was found to be entitled to substantial weight because of its "well reasoned analysis" of Collins's RFC. (Tr. 30). The ALJ found that  Goodman's opinion was "well supported" in the objective medical evidence, whether in his own tests or those of the Horizons Mental Health Center.  (*Id.*)  Collins issued several Medical Source Statements (Tr. 535-36, 691-96, 776-77) which generally concluded that Collins was moderately restricted, and could do "simple work, but not much more than that," and that she perform only low stress jobs. (Tr. 626).

As noted earlier, Collins also argues that this last  conclusion was impermissible vocational testimony, but this mistakes the nature of Goodman's testimony.  Goodman is a psychologist, and offered evidence as to Collins's ability to handle stress, which was entirely appropriate. While Goodman may have also stated that Collins should perform "unskilled" work, there is no indication in the record that the ALJ relied on that evidence in his RFC determination rather than the opinion of Dr. Legler. While the term "unskilled" has a specific meaning in vocational law, this does not mean that any mental health source using the term must be automatically and completely excluded from consideration.

4

Next, Collins argues that the ALJ erred in discounting the evidence from treating physician Dr. Jerry Slomka, M.D. The ALJ accurately recited the factors set froth in *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003) used for the evaluation of the weight to be accorded a treating medical source. Collins first saw Dr. Slomka in 1999, and complains that the ALJ did not explicitly acknowledge the duration of the relationship. However, the ALJ is not required to conduct the *Watkins* analysis in any precise order, and the ALJ here in fact noted the full history of Dr. Slomka's treatment of Collins. (Tr. 30).

The ALJ found that Dr. Slomka's opinion should not be accorded controlling weight because it was not supported by any objective findings; all of his tests results were normal. Further, the opinion was not entitled to substantial weight, because of the absence of evidence showing significant impairment in the records,

> which showed only mild degenerative changes in the spine without stenosis. An MRI of the brain was normal. Abdominal radiographs were normal except for an ovarian cyst. Dr. Slomka's records do not reflect the prescription of narcotic pain medications. His opinion is not supported by the findings of any other medical source, and is not consistent with the claimant's ability to drive 30 minutes at a time to deliver newspapers, spend up to an hour a day preparing meals (as documented on activity of daily living statements), or attend church twice a week. Therefore, his opinion has not been given substantial weight.

(Tr. 31). The court finds that the ALJ set forth an adequate explanation for the limited weight to be given Dr. Slomka's opinions, and finds no error. The ALJ's determination was a fair response to both the ultimate conclusions offered by Dr. Slomka, which would have rendered Collins virtually immobile (Tr. 537-541, 770), and the underlying objective testing, which repeatedly showed essentially normal results. (Tr. 545, 549-50, 729, 731). The ALJ further noted that Dr. Slomka's conclusions were also inconsistent with Collins's own description of her daily activities, which included driving her children around on their newspaper routes. (Tr. 537, 811, 830). Additionally,

5

Dr. Slomka stated that Collins suffered from disabling pain, yet, as noted by the ALJ (Tr. 31), he never prescribed any strong pain medication.

Collins argues that the ALJ erred in determining at step five that she could perform work in the national economy.  Specifically, noting that her RFC requires low stress jobs,  she argues that the vocational expert, Dr. Jon Rosell, was not a reliable witness in testifying that she could perform the jobs of office helper, order clerk, and document preparer, since Rosell has no experience in placing people in those jobs at the national level (only the local level) and that "low stress" is not defined in the *Dictionary of Occupational Titles* (*DOT*). The court finds that the ALJ did not err in relying on the testimony of Dr. Rosell, given his qualifications.  (Tr. 100).  Further, the *DOT* provides standards for job requirements, but is not intended to be a full statement of all aspects of a position. See *Wheeler v. Apfel*, 224 F.3d 891, 987 (8th Cir. 2000).

Finally, Collins argues that the ALJ erred in failing to fully develop the record by declining to consider an additional statement by Dr. Slomka, date September 27, 2006, apparently due to a concern as to who actually signed the form. (Tr. 826).  The statement ultimately was submitted to and considered by the Appeals Council. (Tr. 769-770).  That being so, no error occurred. Further, the statement essentially replicated Dr. Slomka's earlier conclusions, which the ALJ had previously found to have little weight, for reasons which were not erroneous.

IT IS ACCORDINGLY ORDERED this 10th day of March, 2009, that the present appeal is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

6